STATE, RESPONDENT, *v.* DANNER, APPELLANT.

(No. 5,474.)

(Submitted May 19, 1924. Decided May 26, 1924.)

[226 Pac. 475.]

*Criminal Law—Homicide—New Trial—Insufficiency of Evidence—Discretion—Prejudice of Jurors—Disqualification of Jurors.*

Criminal Law—New Trial—Insufficiency of Evidence—Discretion.
   1.   A motion for a new trial in a criminal cause on the ground of insufficiency of the evidence to sustain the verdict is addressed to the sound legal discretion of the district court.

Murder—New Trial—Prejudice of Jurors—Insufficiency of Showing.
   2.   In the absence of a clear showing of error in denying a motion for a new trial asked for on the ground that two jurors were prejudiced against defendant convicted of murder in the first degree, and had so expressed themselves before they were sworn as jurors, where the court had before it affidavits, counter-affidavits and oral testimony, the supreme court will not interfere with the court's action.

Same—Incompetency of Juror—Failure to Exercise Privilege of Examining into Qualifications of Juror Bars Subsequent Complaint.
   3.   Where a defendant accused of crime does not avail himself of the privilege of examining into the qualifications of a prospective juror before the jury is sworn, he may not assign a juror's incompetency (nonresidence in the county in which the case was tried) as ground for a new trial, even though his knowledge of the incompetency comes to him for the first time after the trial.

*Appeal from District Court, Gallatin County; B. B. Law,
Judge.*

SETH ORRIN DANNER was convicted of murder in the first
degree and appeals. Affirmed.

*Mr. Justin M. Smith,* for Appellant, submitted a brief and
argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A.
Foot,* Assistant Attorney General, for the State, submitted a
brief; *Mr. Rankin* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion
of the court.

Seth Orrin Danner was convicted of murder in the first
degree. The jury fixed his punishment at death and the court
entered judgment accordingly. The defendant moved for a
new trial which was denied. He has appealed from the judg-
ment and from the order denying the motion.

I. It is urged that the evidence is insufficient to sustain the
verdict. We need not enter into detail. Admittedly the body
of Florence Sprouse, with whose murder the defendant stands
charged, with that of her husband, John Sprouse, also mur-
dered, was cast by the defendant into a pit which he prepared
for the purpose, and the ghastly contents of which he took
pains to conceal. The bodies lay there from November, 1920,
to June, 1923, when Iva Danner, the stepdaughter, cousin and
young wife of the defendant disclosed them to a deputy sheriff
of Gallatin county. Having been arrested, the defendant at
different times made various statements, which were put in
evidence by the state, of his knowledge of and relations with
Mr. and Mrs. Sprouse. At first he said he left them in South
Dakota and had never seen them since. The fact was that
the Danner and Sprouse families traveling in company had
come from South Montana to Montana with two automobiles in

October, 1920, camping together at Central Park in Gallatin county, so close together that the guy ropes of the two tents were attached to the same stakes. The men trapped and fished together. On November 14 Mr. and Mrs. Sprouse were killed. Mrs. Danner who upon the trial testified without objection, said she saw the defendant kill Mrs. Sprouse; he hit her on the head with an ax, then tied a whang string about her throat. He killed Mrs. Sprouse, as he said, to prevent her from exposing him as the slayer of John Sprouse, so Iva Danner testified.

The last story defendant told was that Mrs. Sprouse had killed her husband with a shotgun while he sat fishing nearly a mile away from the camp, and later that day Mrs. Sprouse attempted to kill Mrs. Danner who to protect herself hit Mrs. Sprouse with an ax—from this blow and poison taken by Mrs. Sprouse she died. Mrs. Danner denied this story.

Danner in the night-time brought to the camp the body of the murdered John Sprouse. Danner said his wife helped him do so. She denied it.

Danner assigned marital infidelity on part of John Sprouse and Iva Danner as the motive for this double tragedy. This his wife denied. She testified defendant said he killed John Sprouse for his money. After the murders the defendant burned some of the personal effects of the Sprouse people, the rest he took for his own purposes. He sold the Sprouse automobile to a witness who was present at the trial. The defendant did not offer any testimony in his own behalf, being content to rest his case upon the evidence produced by the state.

There are some doubtful spots in Mrs. Danner's testimony but in the main it is supported by convincing facts and circumstances. But a jury which would believe the defendant's story or stories would trench upon the limit of credulity.

It is settled in this jurisdiction that a motion for a new trial
[1] on the ground of insufficiency of the evidence to sustain the verdict is addressed to the sound legal discretion of the court. (*State* v. *Schoenborn,* 55 Mont. 517, 179 Pac. 294;

*State* v. *Brantingham,* 66 Mont. 1, 212 Pac. 499.)   Upon this point the court certainly did not err.

II.   It is asserted that two of the jurors were prejudiced [2]   against the defendant and had so expressed themselves before they were sworn to try the defendant.   Affidavits and counter-affidavits were filed and testimony taken upon this issue which the court decided against the defendant.   What was said on this subject in *State* v. *Mott,* 29 Mont. 292 (pages 302–308, inclusive), 74 Pac. 728, is applicable here and need not be repeated.

III.   Defendant's third contention, without merit, is based [3]   upon his allegation that one of his jurors was incompetent for that the juror was not a resident of Gallatin but of Broadwater county.   Of which county the juror actually was a resi dent when the jury-list was made up by the officers of Gallatin county under the provisions of sections 8896, 8897 and 8898, Revised Codes of 1921, is not clear upon the record but as will shortly appear the question is not necessary to a decision of this case.

(a) Even if the point could be made upon motion for a new trial, it was not timely.   The affidavits challenging the competency of the juror were not filed within the time allowed by the court and not until after the motion for a new trial had been submitted, the excuse being that the defendant did not learn of the facts in time to present them earlier.   While the court was of the opinion that an objection made against the filing of these affidavits because not made in time was good, nevertheless it considerately permitted them to be filed.

(b) The point urged cannot be made successfully upon motion for a new trial.   It goes only to the competency of the juror.   A person is not competent to act as a juror unless he is a male citizen of the United States, of the age of twenty-one and not more than seventy years, and has been a resident of the state one year and of the county ninety days before being selected and returned.   (Subd. 1, sec. 8890, Rev. Codes 1921.)

If one be called into the jury-box who does not fulfill the qualifications above specified, a challenge for cause will lie against him. It is the duty of a party to inquire into the competency of the man who is offered as a juror to try his cause, and if he does not do so it is his own fault. (*Presbury* v. *Commonwealth,* 9 Dana (Ky.), 203; *People* v. *Evans,* 124 Cal. 206, 56 Pac. 1024; *Hickey* v. *State,* 12 Neb. 490, 11 N. W. 744.) Whether counsel for defendant made any inquiry whatever into the juror's qualifications upon his *voir dire* the record does not show.

If a defendant does not avail himself of the privilege of examining into the qualifications of prospective jurors before the jury is sworn he may not assign a juror's incompetency as ground for a new trial, even though his knowledge of the incompetency comes to him for the first time after the trial. The overwhelming weight of authority sustains this position. (*State* v. *Quarrel,* 2 Bay (S. C.), 150, 1 Am. Dec. 637; *People* v. *Mortier,* 58 Cal. 262; *People* v. *Evans, supra; People* v. *McFarlane,* 138 Cal. 481, 61 L. R. A. 245, 71 Pac. 568, 72 Pac. 48; *Quinebaug* v. *Leavens,* 20 Conn. 87, 50 Am. Dec. 272; *Costly* v. *State,* 19 Ga. 614; *Mees* v. *State,* 57 Ga. 329; *Chase* v. *People,* 40 Ill. 352; *State* v. *Pickett,* 103 Iowa, 714, 39 L. R. A. 302, 73 N. W. 346; *State* v. *Jackson,* 27 Kan. 581, 41 Am. Rep. 424; *Wassum* v. *Feeney,* 121 Mass. 93, 23 Am. Rep. 258; *State* v. *Durnam,* 73 Minn. 150, 75 N. W. 1127; *Hickey* v. *State, supra; Ryan* v. *Riverside & Oswego Mills,* 15 R. I. 436, 8 Atl. 246; *State* v. *Vogel,* 22 Wis. 471; *Daniel* v. *Guy,* 23 Ark. 50; *Carson* v. *Pointer,* 11 Ala. App. 462, 66 South. 910; *Hollingsworth* v. *Duane,* 4 Dall. 353, Fed. Cas. No. 6618; *Kohl* v. *Lehlback,* 160 U. S. 293, 40 L. Ed. 432, 16 Sup. Ct. Rep. 304 [see, also, Rose's U. S. Notes].)

In many of the cases cited the alleged incompetency of the juror was of a more serious character than that alleged in this case. In some the disqualification assigned was that the juror was an alien; in one case he was a minor, and in another he

was under disability for having borne arms against the United States during the Civil War.

Nor does the fact that the Constitution requires that one accused of crime shall have a "trial by an impartial jury of the county or district in which the offense is alleged to have been committed" (Const., Art. III, sec. 16) affect the situation. (*Wassum* v. *Feeney, supra; Kohl* v. *Lehlback, supra.*) In the case last cited the court said: "The disqualification of alienage is cause of challenge *propter defectum,* on account of personal objection, and if, voluntarily, or through negligence, or want of knowledge, such objection fails to be insisted on, the conclusion that the judgment is thereby invalidated is wholly inadmissible. The defect is not fundamental as affecting the substantial rights of the accused, and the verdict is not void for want of power to render it. (*United States* v. *Gale,* 109 U. S. 65, 72, 27 L. Ed. 857, 3 Sup. Ct. Rep. 1 [see, also, Rose's U. S. Notes].)"

The rule is a salutary one, for, as was said in *Bristow's Case,* 15 Gratt. (Va.), 648: "To permit prisoners to avail themselves, after verdict, of pre-existing objections to the competency of jurors as a matter of right, would not only be unreasonable, but most mischievous in its consequences. The delays in the administration of criminal justice, and the chances for the escape of the guilty, would be greatly increased. Proper verdicts, especially in trials for grave offenses, would be continually set aside." This language was quoted approvingly in *People* v. *Mortier, supra.* In *Carson* v. *Pointer, supra,* the court observed that to allow such a subsequent attack on the verdict would be to give a wide opening for fraud.

Finding no error in the record, the judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.