STAGG, APPELLANT, v. STAGG, RESPONDENT.

(No. 7,208.)

(Submitted March 22, 1934. Decided April 20, 1934.)

[32 Pac. (2d) 856.]

Mr. *S. P. Wilson*, for Appellant, submitted an original and a reply brief, and argued the cause orally.

*Mr. Joseph J. McCaffery,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Deer Lodge county. After verdict of a jury, judgment was entered in favor of the defendant, respondent, and against the plaintiff, appellant.

The action was based on a promissory note for $6,000, bearing date October 8, 1928. The complaint is in the form common to suits on promissory notes. It contains four paragraphs. The first alleges the making and execution of the note, sets out a copy of it, alleges that it was delivered to the plaintiff by the defendant for a valuable considera-

tion, and that the plaintiff is the owner and holder thereof. The second paragraph recites the circumstances of two credits, one of $333.35 and one of $1,315.79. The third paragraph recites the conditions of the note, and alleges that there was due and owing and unpaid thereon at the time of the beginning of the suit the sum of $6,000, together with interest, less the credits mentioned in the second paragraph. The fourth paragraph has to do with attorney's fees.

The amended answer contains five subdivisions. The first subdivision is a direct answer and contains the following language: "Answering paragraphs 1 and 3 of plaintiff's complaint defendant admits the same."

The second subdivision is denominated a first further answer and affirmative defense, and assumes to detail at great length the facts leading up to and surrounding the execution of the promissory note. In substance that subdivision alleges that plaintiff and defendant are brothers and the surviving children of James P. Stagg and Mary Elizabeth Stagg, both deceased; that the mother predeceased the father; that the father died testate, leaving an estate valued at $600,000; that by the terms of the will of James P. Stagg most of his property was devised to the two sons, both of whom are attorneys, and to Barbara Stagg, second wife and widow of James P. Stagg, with the proviso that certain sums given to plaintiff during the lifetime of decedent should be considered as advancements to him and deducted from his share; that the will was admitted to probate, and the estate administered and finally closed; that the defendant, while a student in the state of California, in the year 1912, contracted syphilis, and that about the year 1925 the disease developed into paresis, and that in the year 1927, on account of that illness, defendant neglected his wife and business, indulged excessively in intoxicating liquors, and as a result thereof manifested unnatural and peculiar characteristics, such as going about armed with a revolver; that he paid no attention to his wife, neglected his business, and was subject to moods, all to such an extent

that in the year 1930 the condition had progressed so that his wife made complaint against him charging insanity; that at that time he was represented by his brother, the plaintiff; that as a result of such charges an order was made in the district court of Deer Lodge county finding defendant incompetent and appointing a guardian of his person and estate; that thereafter defendant was taken under guard to Denver, Colorado, for the purpose of receiving treatment, and subsequently to Omaha, Nebraska, for a like purpose, and was treated by a specialist with what is known as the "fever treatment" for the relief of the paresis; that defendant continued legally incompetent until the month of May, 1931, when he was restored to competency by the court.

It is further alleged that about October 4, 1928, all of the beneficiaries under the will, being desirous of closing the estate and all deeming it better to divide the property rather than to have it distributed in undivided interests, proceeded to negotiate for a division of the property; that it was finally agreed that defendant should have as his share what was known as the J. P. Stagg store in Anaconda, and that certain of the other properties were to be distributed to each of the other legatees; that a contract was first entered into between the parties relative to the share of the defendant, and that thereafter other contracts were made and entered into relative to the balance of the property and designating the distributive shares of the other two devisees; that subsequently the district court, acting in conformity with the contracts and agreements, made an order distributing the property of the estate; that during the administration the store, later distributed to the defendant, was conducted by a manager under the direction of J. B. Gnose, the executor of the will; that at the time of the negotiations relative to the closing of the estate, in the forepart of the month of October, 1928, defendant was suffering from paresis, and that his mental faculties were so affected and undermined that he was mentally incapable of attending to or transacting or understanding business by reason of the

disease; that plaintiff constituted himself the adviser and confidant of defendant, and on account of their relationship and long and intimate association, and of the fact that defendant reposed the utmost confidence in plaintiff, he was fraudulently and falsely induced by plaintiff to believe that unless the property was immediately divided and the estate quickly closed, there would be great and irreparable loss in the mercantile business and other property, and that in the course of the negotiations for a division of the property into the three shares, plaintiff had by his cleverness and superior knowledge of the property induced the widow to allow defendant to receive a distributive share of the estate of approximately $35,000 in excess of the amount defendant would have otherwise received, and that as a result of such excessive share, defendant should recompense plaintiff for one-half of such excess amount, to wit, in the sum of $17,500; that immediately after the execution of the contract for defendant's share and before the other contracts were signed, plaintiff induced defendant to make, execute, and deliver to him a promissory note in the amount of $17,500; that the representations so made to defendant as an inducement for the execution of the note were false and were known by plaintiff to be false, and were made in such a way that defendant believed the same and acted upon them and so appended his signature to the note; that at a later time further negotiations were conducted for a division of the remainder of the estate between plaintiff and Barbara Stagg, the widow; that at the time the final negotiations occurred, defendant refused further to participate in the negotiations unless the note for $17,500 was returned or destroyed; that considerable negotiations occurred at that time, and finally a proposal was made by plaintiff that the amount be reduced to $13,500, but that proposition was not accepted, and finally plaintiff induced defendant to give him the note for $6,000 as compensation for the excess amount which he claimed he had obtained for defendant from the estate and the widow in excess of the amount that defendant

would have otherwise received; that defendant only signed the note for $6,000 because of the representations and inducements made by plaintiff and because of the confidence that he reposed in his brother, and because of his weakened and diseased mental condition, and because of such false representations so made to him by plaintiff; that the representations were false and known by plaintiff to be false, but were believed by defendant and were the inducements for the signing of the note, and that as a result of the whole transaction there was no consideration for either the $17,500 note or the note for $6,000, and that the notes were signed solely because of the false and fraudulent representations of plaintiff and the impaired condition of defendant's mind, and the undue influence of plaintiff, and not otherwise; that the impaired condition was brought about by the disease; and that at the time defendant was incapable of attending to or understanding or transacting business by reason of the disease; and that plaintiff exercised undue and compelling influence over defendant to such an extent that he induced him to sign the note and that the execution thereof was not the free and voluntary act of defendant.

The first affirmative defense contained other and additional allegations unimportant for the purpose of this appeal.

The second further answer and affirmative defense repeated practically all the allegations of the first defense, and in addition alleged that at the time of the negotiations in which the note in question was signed, plaintiff represented to defendant that he (plaintiff) would prevent the settlement of the estate of their father for at least a year unless the settlement was made, and that in the meantime the stock and business of the Stagg store would be greatly depreciated in value and inevitable loss would occur.

The fourth subdivision of the answer is denominated a third and separate defense and counterclaim, and in that the defendant alleged that a credit allowed by plaintiff on the note of $333.35 was an amount due and owing to defendant

586

for services, and demand was made for the collection thereof by means of counterclaim.

The fifth subdivision of the answer is also asserted in the nature of a counterclaim and relates to the credit of $1,315.79 which plaintiff mentioned in his complaint as a proper credit to be allowed on the note. In this counterclaim defendant alleges that the amount was due to him from plaintiff on account of purchases at the Stagg store.

It will be observed that the separate and affirmative defenses in reality assume to detail all the facts and circumstances of the J. P. Stagg estate, and particularly the circumstances surrounding the settlement of the business thereof and the execution and delivery of the promissory note, the subject of this action. Both special defenses contain allegations of lack of consideration, mental incapacity, and fraud, and all of them seek to contradict and deny the plaintiff's cause of action.

Plaintiff interposed a demurrer containing five paragraphs, a paragraph designed to present a demurrer to each of the separate answers or defenses, and one paragraph in the nature of a general demurrer to the answer. The demurrer was overruled and a reply was filed.

The reply denied the affirmative allegations of the answer, admitted that the credits were for services rendered and merchandise purchased; admitted the relationship between all the interested parties; alleged that only the sum of $99,000 was advanced to plaintiff by his father; alleged plaintiff's version of the insanity matter and incompetency charges relating to defendant, the restoration to competency, the negotiations for division of the estate property, and that because of his efforts in bringing about the agreement defendant gave him a note for $17,500; that he had refused to consummate the agreements for distribution of the estate until defendant should equalize the shares and that he demanded and received the note for such consideration; that later he surrendered the $17,500 note in consideration of the $6,000 note and then agreed to allow the distribution of

the estate upon the agreed basis. The reply also alleged laches and estoppel.

Plaintiff urges that the general demurrer should have been sustained by reason of the admission in the answer. He asserts and argues that because the answer specifically admitted paragraphs 1 and 3 of the complaint, the plaintiff's cause of action was thereby admitted as a whole. With this contention we cannot agree. It is true that defendant did in the first part of the answer admit the two paragraphs containing the allegations as to the execution and delivery of the note for a valuable consideration and that the sum thereof, less payments, was due. But in the following parts of the answer, designated affirmative defenses, those propositions were explained, negatived, and in effect denied. The answer as a whole may fairly be said to constitute a plea in confession and avoidance. It admits the signing and delivery of the note, and, except for the new matter in the additional allegations, would have admitted the cause of action based on the note. "A plea of confession and avoidance must admit the allegations of the complaint which it assumes to answer." (Bancroft's Code Pleading, p. 3632.)

"Under the new procedure, in every defense of new matter there should be either expressly or by implication, a confession that, but for such new matter, the action could be maintained." (Note 80, Pomeroy's Code Remedies, p. 916, and cases cited.)

There is respectable authority to support the contention that such an admission should be held to prevail over the allegations of the affirmative defenses. In nearly all the cases cited to support the contention, the question arose and was treated under the rule relative to inconsistent defenses. (See *Downs* v. *Nihill,* 87 Mont. 145, 286 Pac. 410, 412.) This court has repeatedly held that inconsistent defenses may be pleaded, so long as they are not so incompatible as to render the one or the other absolutely false. (*Johnson* v. *Butte & Superior Copper Co.,* 41 Mont. 158,

588

108 Pac. 1057, 48 L. R. A. (n. s.) 938; *O'Donnell* v. *City of Butte,* 44 Mont. 97, 119 Pac. 281; *Advance-Rumely Thresher Co.* v. *Terpening,* 58 Mont. 507, 193 Pac. 752.)

In order to sustain plaintiff's contention it should appear that defendant's express admission of paragraphs 1 and 3 of the complaint is so inconsistent with the affirmative matter pleaded in the answer as to make the two incompatible. There really is nothing inconsistent in the answer, when read as a whole; and it is extremely doubtful whether the question of inconsistent defenses arises here at all, because an admission of a paragraph of a complaint is not, strictly speaking, a defense. (*Irwin* v. *Buffalo-Pitts Co.,* 39 Wash. 346, 81 Pac. 849.) What defendant really did was to admit the execution of the note in the form and with the provisions set forth in plaintiff's complaint, and then he proceeded to explain away the effect of the making and execution of the note by the allegations of the special defenses. It was an awkward, not to say dangerous, course to pursue; but it is the general policy of our law and of courts generally to permit great liberality in pleading. (*Reed* v. *Woodmen of the World,* 94 Mont. 374, 22 Pac. (2d) 819; *Sullivan* v. *Metropolitan Life Ins. Co.,* 96 Mont. 254, 29 Pac. (2d) 1046.)

In *Downs* v. *Nihill,* supra, this court said: "Under our Code, a defendant may set forth in his answer as many defenses or counterclaims, or both, as he may have. (Sec. 9146, Rev. Codes 1921.) Great liberality is allowed in pleading; and an answer which states a defense on any possible theory should not be stricken from the files."

In 1 Bancroft's Code Pleading, 635, it is said: "In construing an admission in a pleading the whole thereof must be taken together. It must be taken as an entirety and with any qualifying clauses included in it. Moreover, admissions must be construed in the light of the context of the whole pleading. While it has been laid down that when a pleading is susceptible of more than one meaning, it should be most strongly construed against the pleader because he, having selected the language, should make it clear; yet

averments cannot be construed as admissions where it is clearly evident that they were not so intended.''

When the answer is read in an entirety, there is no such inconsistency as that claimed by plaintiff. Defendant's admission of the execution, delivery, maturity, etc., of the note is entirely consistent with his affirmative defenses. His admission of valuable consideration amounted to no more than that the note on its face imported such consideration and that it was in form a binding instrument. When he admitted the paragraphs in the circumstances of the case, he in effect merely admitted that on the face of the note such amount was due and owing. However, this admission does not stand alone and it would be unfair to the pleader to hold that it should be given effect as though standing alone and that it did preclude him from denying the validity of the note, even though it was regular upon its face and carried the signature of the defendant.

Defendant's separate and affirmative defenses allege, by counter-averments, facts which tend to explain, and, if believed by the jury, would defeat recovery on the note. (Compare *Previsich* v. *Butte Elec. Ry. Co.,* 47 Mont. 170, 131 Pac. 25.) It would have been better pleading and a safer course to pursue if the defendant had in direct connection with the admission elaborated and qualified the effect of the thing admitted. We think, however, it would require too rigid a construction of the pleading to hold that the admission was absolute and not modified by the denials and allegations contained in the immediate following separate answers and defenses. (*Woodward* v. *Melton,* 58 Mont. 594, 194 Pac. 154; *Gotzian & Co.* v. *Norris,* 89 Mont. 307, 297 Pac. 489; *Custer* v. *Missoula Public Service Co.,* 91 Mont. 136, 6 Pac. (2d) 131; *Johnson* v. *Johnson,* 92 Mont. 512, 15 Pac. (2d) 842.)

The parts of the demurrer to each of the affirmative defenses contained in the answer may be considered together. The grounds asserted are general.

What we have said in the discussion of the general demurrer, of the theory that a pleading must be sustained if it states a cause of action or defense or any possible theory, is applicable to the demurrer to the special defenses. In the light of that theory the demurrer to the special defenses was properly overruled. (See secs. 9146 and 9164, Rev. Codes 1921; *Downs* v. *Nihill,* supra; *Sullivan* v. *Metropolitan Life Ins. Co.,* supra; *Reed* v. *Woodmen of the World,* supra.)

An examination of the separate defenses discloses that each one does contain sufficient allegations to constitute a defense. It may be said that each one states at least two and possibly three grounds of defense, viz., fraud, undue influence, and lack of consideration.

To state a case of fraud, a pleading must allege facts embodying the following essential elements: (1) That the plaintiff (in this instance) made a material representation or statement intending that defendant should act upon it; (2) that the representation was false; (3) that defendant believed it; and (4) that he acted upon it to his damage. (3 Bancroft's Code Pleading, p. 2374; *Power & Bro., Ltd.,* v. *Turner,* 37 Mont. 521, 97 Pac. 950; *Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601; *Bump* v. *Geddes,* 70 Mont. 425, 226 Pac. 512.) It appears from the pleadings heretofore set out in the statement of the case, that all these elements were pleaded in the affirmative defenses of defendant's answer.

The affirmative defenses also set up a defense on the ground that plaintiff induced defendant to make the note by exercising undue influence over him. Section 7483, Revised Codes 1921, provides as follows: "Undue influence consists: 1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; 2. In taking an unfair advantage of another's weakness of mind; or, 3. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

Facts are pleaded in the answer showing that defendant was afflicted with a diseased and a resultant weak mind; that he reposed special confidence in plaintiff; and that plaintiff, taking advantage of this confidence, unduly influenced defendant to make the note. This is sufficient to constitute a plea of undue influence. (See *Hale* v. *Smith*, 73 Mont. 481, 237 Pac. 214.)

The defenses contain allegations of want of consideration. Not only is there an express allegation that there was no consideration, but the answer also contains a statement of facts tending to show a lack of consideration. Thus it appears that there was pleaded a lack of consideration sufficient to constitute a defense. (1 Bancroft's Code Pleading, sec. 287.)

While it is true that fraud, undue influence, and want of consideration are all pleaded more or less together in the two affirmative defenses, nevertheless the essential elements are specifically alleged. Under the rules of liberal construction of pleadings and statutes (secs. 9146 and 9164, supra) heretofore adverted to, it appears that the affirmative defenses did allege facts constituting defenses to the cause of action stated in the complaint. (*Downs* v. *Nihill*, supra; *Woodward* v. *Melton*, supra; *Gotzian & Co.* v. *Norris*, supra; *Johnson* v. *Johnson*, supra.)

The two counterclaims contained facts sufficient to constitute causes of action. The court did not err in overruling the demurrer.

For the reasons stated relative to the demurrer, the court properly overruled plaintiff's objection to the introduction of testimony in support of the affirmative defenses.

We find no merit in plaintiff's contention that the court erred in overruling the motion for a directed verdict. As grounds for a directed verdict, plaintiff argued: (1) That the answer did not state facts sufficient to constitute a defense; (2) that there was no evidence of fraud; (3) that there was no evidence of undue influence; (4) that the testimony conclusively shows that the note was based upon a

good consideration; (5) that defendant failed to plead or prove facts sufficient to show that he was entirely without understanding at the time of the execution of the contract; (6) that the facts pleaded by the defendant disclose that defendant should have sought a rescission of the note, and that, failing to do so, he has no other recourse or remedy; and (7) that defendant never made any attempt to restore the consideration received by him at the time he gave the note.

Giving consideration to these specifications in the order indicated, we come first to the question of pleading. This matter we have considered and have held that the answer was sufficient.

We have indicated that defendant did sufficiently plead fraud. The court, however, instructed the jury to eliminate the question of fraud because there was not sufficient testimony to justify such a finding, and, therefore, it is not necessary to inquire into that matter further. It may be assumed that the ruling was correct.

There was sufficient evidence of undue influence to go to the jury. Defendant himself and several of his witnesses gave testimony which indicated that plaintiff had by means of undue influence and false representations induced defendant to make the note, and that defendant was at the time suffering from a mental disease and that he reposed great confidence in plaintiff.

There was sufficient evidence from which the jury could find that there was no consideration for the note. Plaintiff's assertion that defendant should have shown an attempt to restore the consideration received by him is without merit. If there was no consideration, there was nothing for defendant to restore.

Plaintiff seems to take the position that defendant in his answer has attempted to set up a defense solely under the provisions of sections 5683 and 5684, Revised Codes 1921. Section 5683 provides that "a person entirely without understanding has no power to make a contract of any kind,

but he is liable for the reasonable value of things furnished to him necessary for his support or the support of his family." Section 5684 declares that "a conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission, as provided in the chapter on rescission of this code."

Plaintiff argues that defendant has failed to plead or prove that he was entirely without understanding so as to bring himself within the meaning of section 5683. He also contends that section 5684 is not available to defendant as a defense here, because it provides only for rescission. As, however, we have already indicated, defendant did not rely solely upon such a defense. He set up at least three other defenses: Fraud, undue influence, and want of consideration.

It was not necessary to decide whether defendant did plead or prove sufficient facts to show that he was entirely without understanding when he executed the note, in order to bring himself within the meaning of section 5683 or section 5684, Revised Codes 1921. The question whether defendant should have proceeded to have the note rescinded is also immaterial, because such question would be pertinent only in the event that defendant's defense was based solely upon the provisions of section 5684. We have found that defendant did sufficiently plead undue influence and lack of consideration. There was sufficient evidence, if believed by the jury, to maintain these defenses. It follows that the court was correct in overruling plaintiff's motion for a directed verdict and in sending the case to the jury.

Plaintiff's specifications of error V, VI, VII, and VIII relate to rulings of the court admitting in evidence, over his objections, certain statements made by defendant's witnesses Knight and Gnose. The following testimony of Mr. J. B. Gnose, executor of the J. P. Stagg estate, was admitted over plaintiff's objection: "I remember at the

time the residuary legatees of the estate of Mr. Stagg were trying to settle the respective claims, and I recall that there was some conversation about a note. It was when they were trying to agree on the settlement of the estate and I was called over to the office at the Stagg store where they were meeting. I do not remember the date of this. * * * I told the parties interested there that it was no concern of mine, * * * the reading of the paper, it was no concern of mine, no part of my business. They insisted that I read it, which I did. I says, 'Have you agreed?' They all said 'Yes.' But John said, 'There is one other consideration to be taken care of before we sign.' I says, 'What is it?' He said, 'There was to be a note signed somewhere in the neighborhood of $16,000 or $17,000.' I says, 'No. I doubt if Ira owes you one dollar. When we settled the estate—when I took over the estate, the estate owed Ira Stagg $13,000 which was to his credit on the books, which we paid him.' * * * He [John] insisted then that the note be $6,000. I says, 'John, if this man owed you $17,000 ten minutes ago how could he owe you $6,000 now?' and I says, 'In my view of the matter you should be ashamed * * *. You will rue the day that you robbed your brother. If your father knew it he would turn over in his grave to know that you in this day are trying to rob your brother; * * * you talk about your Shylocks, pound of flesh without a drop of blood, * * * you make him ashamed of himself,' and I got up and got out.''

Mr. J. B. C. McKnight, attorney for the estate, who was present at the time when Gnose made the above statements, was permitted to testify as to the statements made by Gnose.

Plaintiff contends that these statements do not bear upon any issue in the case, and that the only purpose they served, or were intended to serve, was to disparage and prejudice plaintiff in the eyes of the jury. He cites authorities in support of his contention. A careful examination, however, of those authorities discloses that the courts were dealing with entirely different situations from those presented here.

As an example of the distinction, we refer to the following excerpt which plaintiff quotes from 22 C. J. 325: "For a person is not at liberty to make evidence for himself by the simple expedient of saying something to his opponent and then supporting the truth of his statement by proof that it was not denied." The statements to which plaintiff objects were not made by defendant; they were made by a third party, who participated in the negotiations.

Defendant contends that the evidence was offered for the following reasons: (1) That it showed the unreasonableness of defendant's act in the face of the advice of his stepmother and of his cousin Gnose; (2) that it illustrated in itself the weakness of his mind; (3) that it was evidence of the influence of plaintiff upon defendant. There is merit in this contention. The evidence was admissible under section 10511, Revised Codes 1921, which reads as follows: "Where, also, the declaration, act, or omission forms part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act, or omission is evidence, as part of the transaction."

Such evidence was part of the *res gestae*. "*Res gestae* are the circumstances, facts, and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character." (*Sullivan* v. *Metropolitan Life Ins. Co.*, ante, p. 254, 29 Pac. (2d) 1046, 1049.) In 22 C. J. 446, the rule is stated as follows: "Where the making of a statement in controversy or the doing of an act, assists in constituting the transaction or in proving *per se* a relevant fact, the declaration or act is competent." (See, also, *Callahan* v. *Chicago, B. & Q. R. Co.*, 47 Mont. 401, 133 Pac. 687, 47 L. R. A. (n. s.) 587.) Again, in 22 C. J. 450, it is said: "It is not necessary to render a statement or act admissible as part of the *res gestae*, that it should have been made or done by one of the participants in the main transaction, but if it has the necessary connection with the main fact it may be admissible no matter by whom it was made or done, provided in the case of a declaration, that it relates

596

to a matter of fact which the declarant might testify to if called as a witness.'' The admissibility of such testimony in evidence is largely a matter of sound legal discretion in the trial court, subject to review only in case of manifest abuse. (*Callahan* v. *Chicago, B. & Q. R. Co.*, supra; *Sullivan* v. *Metropolitan Life Ins. Co.*, supra. See, also, 22 C. J. 449, and cases cited.)

The witnesses Gnose and Knight were not disinterested bystanders. They were present at and participants in the meeting of the parties interested in the estate of J. P. Stagg. It must not be forgotten that the widow and the two sons were to share equally in the residue of the property. Mr. Gnose was the executor of that will, and Mr. Knight was the attorney for the estate. It was their plain duty to see that the property was distributed equally in accordance with the terms of the will. The note was executed and given at a meeting between all the parties interested in the estate. It is true that the note was given after defendant's share had been agreed upon between the legatees, but before the final agreement for the complete segregation of the property had been executed. The agreements for the segregation and division of the property were to form, and did form, the basis for the petition for distribution later filed by the executor of the estate, and for the subsequently entered decree of distribution. These agreements contained property allotment provisions to be inserted in both the petition and the decree, in lieu of the broad general provisions of the will. It was but right that the executor and the attorney should have been interested. They knew the reasons urged for the execution and delivery of the note. The conversations related by them were part and parcel of the arguments occurring at the time the note was signed. They were pertinent to the facts in issue. We think they were admissible as such.

Error is predicated upon the refusal of the court to give plaintiff's offered instructions E and F, both of which relate to the question of consideration. We find that the court, in other instructions, adequately instructed the

jury upon the question of consideration. The error, if any, was not prejudicial.

Objection was made to instruction No. 9. That instruction reads as follows: "You are instructed that if you believe from a preponderance of the evidence in this case, that the defendant was on the 8th day of October, 1928, suffering from a disease known as paresis, to such an extent as to make him mentally incompetent, though not insane, and that due to said disease and weakness of mind he was unable, without assistance, to properly care for himself or his property, and you further believe that the plaintiff had and exercised over the defendant, at said time, undue influence, and that the defendant reposed special trust and confidence in plaintiff, and the plaintiff by reason of their relationship, and the confidence reposed in him by the defendant and due to defendant's mental condition, if any, and against the advice of their relatives induced the defendant to execute the notes mentioned in the evidence in this case, and you further find that the note introduced in evidence in this case was executed on the 8th day of October, 1928, or four days after defendant's interest in the estate of their deceased father had been determined and reduced to writing, and that the only consideration of said last mentioned note was the surrender by plaintiff of the note for $17,500 and that said note for $17,500 was executed after defendant's interest was determined on the said 4th day of October, then you are instructed that there was no consideration for said note."

In harmony with the views heretofore expressed in this opinion, the first part of instruction No. 9 was proper as an instruction on the question of undue influence. The last part of the instruction, although it may be somewhat confusing, is not so erroneous as to constitute reversible error. The most that can be said of it is that it was unnecessary and surplusage, and as such constituted harmless error. In view of the other instructions given by the court, we fail to see how plaintiff could have been harmed by this portion of

the instruction, even conceding that it contained surplusage and as such tended toward confusion. If the $17,500 note was illegally obtained from defendant, or if it was obtained through undue influence or misrepresentation by plaintiff upon defendant, then manifestly there was no consideration for it. The jury evidently found this to be a fact. The yielding back of such a note could not be held to constitute any consideration for the new note. It may fairly be said that the latter portion of the instruction was unduly favorable to plaintiff.

Error is assigned in denying plaintiff's motion for a new ▮▮▮ trial. It is claimed that one Edward Spiegle was not a qualified juror, for the reason that he was a convicted felon laboring under the disabilities of conviction. (Secs. 8892, 11600, Rev. Codes 1921.) It appears that when the jury was being impaneled, counsel for plaintiff had an opportunity to inquire as to the qualifications of the jurymen. He exercised that right, but failed to inquire specifically whether Juror Spiegle had ever been convicted of a crime. Plaintiff must be held to have waived any objection to the juror's qualifications. (*State* v. *Hoffman*, 94 Mont. 573, 23 Pac. (2d) 972; *State* v. *Danner*, 70 Mont. 517, 226 Pac. 475, 476. See, also, 35 C. J. 370.) In *State* v. *Danner*, supra, the court said: "If a defendant does not avail himself of the privilege of examining into the qualifications of prospective jurors before the jury is sworn, he may not assign a juror's incompetency as ground for a new trial, even though his knowledge of the incompetency comes to him for the first time after the trial."

Error is predicated upon a statement made by counsel for ▮▮▮ defendant in his argument to the jury. In the course of the trial, certain letters claimed to have been written by plaintiff to his wife were offered in evidence by defendant. Upon proper objection by plaintiff, the letters were refused admission as evidence. Defendant's counsel in his address to the jury attempted to discuss the refusal of the court to admit these letters and the reason for the objection

to their admission, but he was stopped before he had completed a statement on the subject. He said: "No wonder the plaintiff's counsel did not want the letters introduced in evidence, but—" At that point objection was made, and the court promptly ruled that counsel had no right to comment upon the letters.

Counsel did exceed his right in attempting to discuss the matter at all, but the record discloses that he was stopped before he had really said anything of serious import, and the court protected the rights of plaintiff by its prompt ruling, in the presence of the jury, that the discussion was not proper. The trial court, in overruling plaintiff's motion for a new trial, necessarily determined that plaintiff had not been prejudiced. We are not justified in disturbing that finding. That court was in a much better position than is this court to determine such question. From all that appears in the record, we are satisfied that the alleged misconduct of defendant's counsel did not prejudice plaintiff. The error, if any, was harmless and does not constitute sufficient ground for a reversal.

After a careful consideration of the whole record and all of plaintiff's specifications of error, we fail to find any reversible error.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.

Rehearing denied May 18, 1934.