**UNITED STATES of America**

v.

**Oliver L. NORTH.**

**Crim. No. 88–0080–02.**

United States District Court, District of Columbia.

June 30, 1989.

---

Lawrence E. Walsh, Independent Counsel, John W. Keker, Michael Bromwich and David Zornow, Office of Independent Counsel, Washington, D.C., for U.S.

Brendan V. Sullian, Jr. and Barry S. Simon, Washington, D.C., for defendant North.

Vincent R. Alto, Washington, D.C., for juror Tara King.

### MEMORANDUM AND ORDER

GESELL, District Judge.

On June 15, 1989, defendant filed under seal a paper captioned "Reply Memorandum" in support of an earlier post-trial motion (# 90) seeking an *in camera* hearing relating to qualifications of juror Tara L. King.  On the previous day, June 14, the Court had already denied motion No. 90.

After examination of the "Reply Memorandum," however, a hearing appeared necessary because of fully documented additional information included, and the Reply Memorandum was treated as a motion for reconsideration. By Order of June 20, 1989, the Court released all materials relating to motion No. 90 which had previously been filed under seal and scheduled a public evidentiary hearing for June 28, 1989. The hearing was held and defendant has moved for a mistrial.

The motion concerns Tara L. King, age 34, a copy machine operator with a steady history of employment. She completed the 12th grade at Roosevelt High School and has lived in the District of Columbia for 27 years. She has five sisters and nine brothers and in recent years she and her mother have lived with many of her siblings in the family home. She is a registered voter. This was her first experience as a juror.

Prior to the hearing the Court addressed one aspect of Independent Counsel's opposition to defendant's motion for a hearing. The prosecution had correctly cited a line of cases which require defendant to move promptly whenever it receives information of prior misconduct. Since it is clear, as stated in *United States v. Jones*, 597 F.2d 485, 488 n. 2 (5th Cir.1989), *cert. denied*, 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 728 (1980), that "a defendant cannot learn of juror misconduct during the trial, gamble on a favorable verdict by remaining silent, and then complain in a post-verdict motion that the verdict was prejudicially influenced by that misconduct ...," the Court directed defendant to establish that it had not withheld information on juror "misconduct" for tactical purposes.

Defense counsel advised the Court on June 23, 1989 that they had obtained Exhibits 2 and 3, first submitted on June 15, 1989, shortly before the scheduled date for filing post-trial motions on May 30, 1989, and that they obtained Exhibits 4, 5 and 6 on June 9, 1989. The defense acknowledged that after the verdict but as early as May 16, 1989 counsel had been informed that a brother of King had drug problems, had been picked up by the police and involved in a Superior Court prosecution. While a more candid approach by defendant's counsel to the Court would have saved delay and much inconvenience, it is clear that there was no effort to "sandbag" the Court by first gambling on the verdict. Although on May 5, 1989 the Court approved counsel's request to interview jurors, defense counsel advised the Court that King "has not granted counsel for defendant an interview at any time." All information came to the defense post-verdict and was presented in a reasonable time.

### The Voir Dire

Selection of the jury progressed through the following stages.

*First.* Jurors were brought to courtroom No. 6 and the Deputy Clerk administered an oath in which each juror swore to answer all questions truthfully. The Court then asked each juror to fill out a detailed voir dire questionnaire. The Court emphasized the need for each juror to answer fully and correctly and the jurors then were specifically sworn to answer the questionnaire truthfully. (Tr. 175–178.) Thereafter, they were taken to the Ceremonial Courtroom where they filled out the voir dire questionnaire at their own pace.

*Second.* Each juror who remained eligible after completing the questionnaire returned to the courtroom, one at a time, for further questioning. The Court and counsel then reviewed a copy of the juror's completed voir dire questionnaire and after some preliminary questions by the Court, counsel on each side asked additional questions of each juror. This questioning was not limited to answers given on the questionnaire.

*Third.* A juror would then be temporarily excused and after hearing any objections to the juror's qualifications the Court determined whether or not the juror appeared qualified.

*Fourth.* On a few occasions a juror found qualified returned for additional questioning at the request of a party.

King was found qualified after this process. Neither side objected. (Tr. 175–178; 344–358.) She answered question #23 of the written voir dire questionnaire (Hearing Ex. A) as follows:

> Have you or any member of your immediate family ever been involved as a party to or appeared as a witness in any court proceeding (civil or criminal) or in any investigation by a federal or state authority or by an official legislative body or agency?
>
>     Yes___    No _X_

After completing the questionnaire, King signed at the bottom of the voir dire questionnaire below the following:

> I certify that all answers are true to the best of my knowledge and belief.

At no time during oral questioning did the Court or counsel refer to the subject matter of question #23 or to her answer. Oral voir dire concentrated on her general lack of Iran–Contra information, her lack of bias and on the experience of two brothers she reported in answering question #9 as having served in the Army.

King was the only witness at the June 28 hearing. She acknowledged that her answers to questions #9[1] and #23 were not accurate. She testified for a period of approximately one and one-half hours, responding directly to all questions.

Under question #9, King failed to list two other brothers who were also in the Armed Service: her brother, Sam, was in the service when she was two years old and her brother Omar ("Rick") served during the Vietnam war. She had known something about each of these brothers' service but she testified that she simply forgot when filling out the questionnaire.[2]

In response to question #23, King failed to mention that she had been involved in an investigation into a series of armed robberies committed by her brother Sam. This investigation resulted in his plea of guilty to one count of armed robbery for which he served a sentence of more than a year. Sam is seventeen years older than Tara and not as close to her as some other siblings are. He lived in the same house as King at the time he was sent to jail, and he returned home when paroled. His conviction caused sadness and great concern to King and her mother at the time. Tara King was not a suspect in the investigation, but she testified very briefly before the grand jury on behalf of the government, disclosing the circumstances under which Sam had borrowed her boyfriend's truck, which was apparently used in connection with a robbery. One of her sisters had had additional information relating to the robbery and the police had been to the home questioning King and her sister in December 1986, approximately 14 months previous to the time she filled out the voir dire questionnaire. King testified she had simply forgotten these events and, indeed, never knew the details of Sam's criminal conduct.

In addition, Sam had had a similar charge in 1981; Michael had been charged with crimes approximately nine years ago, when Tara did not live at home; Manuel had an outstanding charge in Fairfax County, Virginia; three siblings had divorce or child support problems, and a couple of other matters involved charges against other brothers which were nolle prossed or not papered. She testified she did not know anything about most of these matters and did not associate the little she did know with the question.

Defendant contends that these inaccurate responses to questions #9 and #23 were intentional, that the juror's claim that she had forgotten them or put them out of her mind cannot be believed, that defense

---

1. Have you or any immediate members of your family ever served in any branch of the armed forces of the United States (including the military reserve or ROTC?)

   Yes _X_   No ___

   If "yes," please state the name of person or persons covered by your answer and state the branch in which served and approximate dates of service:

   | Person's name: | Branch: | Dates: |
   |---|---|---|
   | John King | Army | ——— |
   | Manuel King | Army | 9/82 |

2. Of no consequence is her failure to state in question #22 that she had operated a copy machine for a law firm in response to a question regarding prior employment in a law firm.

counsel would have removed her for cause or by a strike if the facts had been revealed, and that a mistrial should be declared.

The Court, after observing juror King's demeanor and considering the entire record, has concluded on the basis of the record, drawing on its experience, as follows:

(1) King answered question # 9 and question # 23 of the written voir dire questionnaire incorrectly.

(2) At the time she answered she was somewhat nervous and casual, as evidenced by the fact that she indicated that she had not *heard of* Ronald Reagan by failing to circle his name on a long list of persons whose names might arise during the case.

(3) She had been instructed by the Court not to seek assistance of court personnel in answering or attempting to understand a question.

(4) She did not fully understand question # 23, which was somewhat convoluted and had several aspects. (Hearing Tr. 6/28/89 at 42, 64). Moreover, she had no basis for appreciating whether or not many of the events brought to her attention at the June 28 hearing, of which she only had limited knowledge at best, involved a federal or state proceeding and accordingly she lacked complete comprehension.

(5) King wished to serve as a juror when she first received a notice from the Clerk's office, but at that time the *North* case was not mentioned in the notice. Later, just before she was instructed about the questionnaire she learned she was a potential juror in the *North* case. She realized the case was important and that she would have to have a clear and open mind and listen.

(6) King's failure to list under question # 9 all of her brothers who had served in the Armed Services was inadvertent.

(7) The Court cannot credit King's testimony that she failed to mention her brother Sam's recent conviction by plea of guilty because she "forgot."

(8) There is no proof even indicating what she felt would be the consequences of full disclosure. No ulterior purpose to hide this fact was established. She had been distressed over Sam's conviction and the family was embarrassed. She may well have felt it would prevent her being considered for jury service. Her omission was knowing, but she had no desire to help or to hurt North or the prosecution.

(9) If King had answered question # 23 accurately as to Sam's conviction, other facts, by no means all the information dug up by the defense, would have been developed.

(10) King might have been stricken by Independent Counsel on implied bias grounds either because of fear that family involvement with the criminal system would create a hidden bias favorable to North, or because she herself answered falsely under oath before the trial of a false statement case.

(11) King might have been stricken by the defense. In any event, disclosure of Sam's conviction would probably have led to further investigation by the defense and questioning during trial to support a motion for mistrial. Three other jurors whose answers to # 23 were later revealed to be questionable continued to sit as jurors when a mistrial was denied and defendant preferred not to accept alternates.[3] Earlier, during jury selection, the prosecution brought to the Court's attention other prospective jurors who had not answered question # 23 accurately. These jurors were dismissed for cause at the request of the prosecution over objection.[4] One juror who herself had a criminal conviction sat as an alternate.

(12) No proof was presented indicating that King was unfair or that she failed in any way to serve conscientiously. She voted to acquit North of many felony counts.

(13) King was not biased for or against either side.

---

3. *In camera* hearing, April 20, 1989.

4. Tr. 953, 956–957; Tr. 1201–1204; 1292–1305.

Situations of this type arise with some frequency in cases when the defense has ample resources. Each must be resolved on its own facts and particular circumstances. They must be resolved in favor of the verdict when bias against the defendant has not been established in fact or by implication. *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984); *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

Defendant has failed to meet his burden in this instance and the motion for a mistrial must be and hereby is denied.

SO ORDERED.