24 F.3d 1464
 306 U.S.App.D.C. 356
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Clinton E. SHARPE, Appellant.
 No. 92-3107.
 United States Court of Appeals, District of Columbia Circuit.
 May 26, 1994.
 
 Before: MIKVA, Chief Judge, SENTELLE, Circuit Judge and MacKINNON, Senior Circuit Judge.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on appeal from the United States District Court for the District of Columbia and on the briefs filed by the parties and arguments by counsel. The arguments have been accorded full consideration by the court and occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that appellant's conviction is reversed and the case is remanded to the district court for a new trial.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a)(1).
 
 MEMORANDUM
 A. Facts
 
 4
 On May 8, 1991, Metropolitan Police Officers Truesdale and Parker were performing lookout duty from a first floor apartment at 1710 Gale Street N.E. From their post about 10 feet away from the front steps of the apartment, Officer Truesdale observed appellant, Clinton Sharpe, handling a brown paper bag that Truesdale said contained small zip-locked bags of crack. He saw Sharpe reach inside the bag, then crumple it up and place it in a crack between two of the front steps of the apartment. Truesdale wrote down a description of Sharpe as a black male wearing a white t-shirt with multi-colored designs on the front, blue jeans, and multi-colored tennis shoes with a white base. The time was 7:30 p.m. Shortly thereafter, Truesdale broadcast that description to the arrest team, which moved in, arrested Sharpe, and recovered the drugs from between the steps. Truesdale testified at appellant's suppression hearing and trial that he had observed Sharpe continuously in the area for about 1 1/2 hours prior to the arrest, and never lost sight of him during the period between his placing the drugs between the steps and the arrest. Police arrested or detained several other young black men at the same time Sharpe was arrested.
 
 
 5
 Appellant's first trial ended in a hung jury. The government's key witness at the second trial was Officer Truesdale, who testified to the facts described above. On cross-examination, in an effort to establish that Truesdale misidentified appellant, defense counsel attempted in vain to question Truesdale about the physical descriptions of the other black men who were present during the period he observed appellant. The court sustained all of the government's relevancy objections to this line of questioning, advising defense counsel after an extended colloquy, "You can't ask anything about any of the other people.... They are not on trial."
 
 
 6
 In its case in chief, the defense called eleven witnesses. Some were members of a baseball team that Sharpe coached at a park across the street from 1710 Gale Street who testified that Sharpe was at baseball practice until 7:00. Others said they observed a number of other individuals at the scene when the arrest was made, some of whom were wearing "white t-shirts and jeans." Other witnesses stated that they saw appellant throwing a football and, along with several others, playing with a hand-held video game on the porch of the apartment. None said they saw appellant carrying a brown paper bag or drugs.
 
 
 7
 The jury convicted appellant of both counts.
 
 
 8
 After the verdict, appellant filed a motion for new trial and supplemented that motion when he learned that a juror provided erroneous responses to questions posed by the court during voir dire. Specifically, the court asked all potential jurors the standard questions: "Have you or your very close family members ... been charged with a serious crime in the last 10 years?" and, naming the potential witnesses, "Do any of you recognize those names as somebody that you know?" Juror Earlen Cunningham responded negatively to both questions. The defense discovered after the verdict, however, that Cunningham's son had been arrested on numerous occasions and had been convicted in Superior Court for possession with intent to distribute cocaine--the same charge on which appellant had been convicted. The defense also learned that one of the defense witnesses, Rodney Martin, was an acquaintance of Ms. Cunningham's son and had been to the Cunningham home on at least one occasion when Ms. Cunningham was present. The defense also moved to interview Ms. Cunningham pursuant to Rule 115 of the Local Rules. The court denied both motions, stating that appellant "has not demonstrated any bias on the part of [Ms. Cunningham]."
 
 
 9
 Mr. Sharpe presents two primary issues on appeal: (1) whether the district court properly sustained the government's relevancy objections to the cross-examination of Officer Truesdale on the physical descriptions of other black males near the crime scene, and (2) whether the court erred in ruling that Ms. Cunningham's erroneous voir dire answers did not warrant a new trial or, alternatively, a hearing to determine whether she was biased against appellant.
 
 B. Discussion
 
 10
 We begin, and end, with the voir dire issue. As it is reasonable to assume that a mother is aware of her son's frequent brushes with the law, particularly those resulting in convictions, it is distinctly possible that Ms. Cunningham gave an intentionally erroneous answer to the question about the criminal activity of close family matters. When combined with her failure to acknowledge the relationship between one of the defense witnesses and her son--which by itself may have been an innocent oversight--her possible dishonesty is even more troubling.
 
 
 11
 When a juror responds dishonestly to a question posed at voir dire, the remedy generally endorsed by this circuit is for the district court to conduct an in camera hearing to determine whether the juror harbored an actual bias against the defendant. See United States v. Boney, 977 F.2d 624 (D.C.Cir.1992). The district court therefore erred in failing to conduct such a hearing in this case. It is now almost two and a half years since appellant's trial, however, and the likelihood is remote that a hearing could effectively and fairly determine what motivated Ms. Cunningham's non-disclosure. Accordingly, we reverse appellant's conviction and remand this case to the district court for a new trial. Although we express no ultimate conclusion on the propriety of the court's evidentiary rulings, we are nonetheless troubled by the total exclusion of questioning designed to explore what appears to be the central and most relevant issue in the case--the credibility of Officer Truesdale's identification.